## BOWERS v. ATLANTIC, GULF & PACIFIC CO.

(Circuit Court, S. D. West Virginia.   November 19, 1907.)

### No. 95.

1. PATENTS—SUIT IN EQUITY FOR INFRINGEMENT—NECESSARY PARTIES.

In a suit in equity by a patentee for infringement, where the bill discloses that complainant contracted to convey to another an interest in the patent by way of assignment or license, the court will regard such contract as having been carried out for the purpose of determining whether or not the assignee or licensee is a necessary party either as sole or joint complainant.

2. SAME—CONVEYANCE BY PATENTEE—ASSIGNMENT OR LICENSE.

A conveyance by a patentee to another of the sole and exclusive right and license to use and to build for use within territory described the machines of the patent, with certain express exceptions, and also reserving to the patentee the right to build machines in said territory for use outside thereof, is a mere license, and not an assignment, and the grantee cannot maintain a suit for infringement of the patent in his own name, unless against the patentee, nor is he a necessary party to such a suit in equity by the patentee, although he is a proper party if his interests will be affected by the decree, and on seasonable objection by the defendant may be made a party in the discretion of the court.

In Equity. On plea to amended bill.

J. H. Miller and W. E. Chilton, for complainant.
R. H. E. Starr and Malcolm Jackson, for respondent.

KELLER, District Judge. The object of the plea is to compel the plaintiff to join as a party plaintiff the Bowers Southern Dredging Company, upon the ground that the latter company owns what amounts to an exclusive license within the territory described in the amended bill as that wherein the acts of infringement stated in the bill are alleged to have occurred. The amended bill, in paragraphs 20, 21, and 22, under the provisions of equity rule 21, makes the following statement and avoidance of one of the supposed defenses to the bill:

"(20) And your orator further shows unto your honors that it is claimed and pretended by the respondent that at the time of the commencement of the suit herein, and for more than six years prior thereto, the Bowers Southern Dredging Company, a corporation created under the laws of the state of Texas, owned and possessed certain exclusive rights and privileges to practice the inventions covered by said letters patent in the territory where the infringing acts of the respondent hereinbefore alleged were committed, and that said exclusive rights are charged by the allegations of the bill of complaint to have been infringed by the respondent, for which reason it is claimed and pretended by the respondent that the Bowers Southern Dredging Company is a necessary and indispensable party complainant herein, and must be joined as a party complainant herein with your orator, and that your orator cannot alone maintain this suit, and for that reason it must be abated; but your orator avers that such pretense of the respondent is unsound both in point of law and fact, and in that behalf your orator avers the facts to be as follows: That on July 6, A. D. 1899, your orator entered into a written agreement with Charles Clarke & Co., a copartnership consisting of Charles Clarke, R. P. Clarke, and Charles Clarke, Jr., all of Galveston, in the state of Texas, whereby it was covenanted and agreed that a corporation should be formed called the Bowers Southern Dredging Company, and immediately after its formation said Charles Clarke & Co. should convey to it certain dredging machines containing the inventions covered by your orator's patents owned by said Charles Clarke & Co., and certain unfinished contracts for dredging, and that immediately after the formation of said corporation your orator should convey to it the sole and exclusive right and license to use in the territory (hereinafter described, and to build for use in said territory), but in no other place or places, during the lives of your orator's patents herein sued on, hydraulic dredging machines covered by said letters patent, reserving to your orator, however, the right to build in said territory and sell to the United States government for use therein one of such machines, and also the right to build such machines in said territory for use outside thereof, and also the exclusive right to build, use, and sell machines in said territory for mining purposes—that is to say, for recovering the precious metals from the bottoms of waterways—that the territory covered by said proposed license commenced at the boundary line between the United States and Mexico on the Gulf of Mexico, and extended to Key West near the southern point of the peninsula of Florida, being that portion of the Gulf of Mexico within the jurisdiction of the United States, together with its tributary waters, save and except Matagorda Bay and its tributaries, and the Mississippi river and its tributaries north of the city of Memphis, in Tennessee.

"(21) And your orator further shows unto your honors that thereafter the corporation provided for in said agreement of July 6, 1899, was created under the laws of Texas and was called the Bowers Southern Dredging Company; that immediately after its incorporation said Charles Clarke & Co. conveyed to it the said dredging machines and other property and unfinished contracts which by said agreement they had covenanted to convey; that, after the formation of said corporation, your orator did not convey nor has he ever

conveyed to said corporation Bowers Southern Dredging Company the sole and exclusive or any right and license to use in said territory, or to build for use therein during the lives of the patents sued on or either of them, any hydraulic dredging machine covered by said letters patent or either of them, nor any exclusive or other right or license under said patents or either of them, but the said Bowers Southern Dredging Company continuously after its incorporation and up to the time of the commencement of this suit made and used and is now using in the territory aforesaid hydraulic dredging machines containing the inventions patented by the letters patent sued on herein, and without protest or hindrance from your orator and by and with his knowledge and implied consent.

"(22) And your orator further shows unto your honors that this suit was instituted and is being prosecuted with the knowledge and·consent of the Bowers Southern Dredging Company, and for its use and benefit, as well as for the use and benefit of your orator. * * * "

The plea asserts this very defense, substantially as prevised in the bill, except that it denies (on information and belief) complainant's allegations that he has not conveyed to the Bowers Southern Dredging Company the rights admitted by him to have been agreed to be conveyed, and that the present suit is being prosecuted for any "proper use or benefit" of complainant personally.

The complainant has now caused this plea to be set down for argument under the provisions of equity rule 33, challenging its legal sufficiency on two grounds, viz.: (1) That on the merits the plea is insufficient in law to show that the Bowers Southern Dredging Company is either a necessary or proper party complainant; and (2) that the plea is too vague and indefinite, and that it is insufficient to raise the allegations it seeks to raise by reason of the fact that it does not contain sufficient averments of fact, but consists too largely of mere conclusions of law.

Before addressing ourselves to the consideration of these questions, or either of them, let us consider the prayer of the amended bill and see what relief is prayed for therein. The bill, inter alia, prays:

"That the said respondent be directed to pay to your orator the damages he has sustained and the gains, profits, and advantages realized by the respondent from and by reason of the infringement aforesaid, together with its costs of this suit."

The bill further prays for injunction and general relief.

This prayer, taken in connection with the averments of the bill in respect to the equitable interest of the Bowers Southern Dredging Company in the patents within the territory mentioned in the bill, make it clear that the plaintiff herein seeks to recover all damages and profits accruing from the alleged infringement, as well those equitably belonging to the Bowers Southern Dredging Company, as those, if any, equitably belonging to plaintiff personally. This fact is further revealed by the averment in paragraph 22 of the amended bill that this suit is being prosecuted with the knowledge and consent of the Bowers Southern Dredging Company, and for its use and benefit, as well as for the use and benefit of the plaintiff. Notwithstanding the language of the bill heretofore quoted, and contained in paragraphs 20, 21, and 22, it is apparent therefrom that the Bowers Southern Dredging Company is equitably entitled to an execution of the license agreed by Bowers to be conveyed to it, and it stands in the

162 F.—57

same relation to this suit as though that license had been executed in writing. Littlefield v. Perry, 21 Wall. 205, 22 L. Ed. 580. In Wheeler v. McCormick, Fed. Cas. No. 17,499, Judge Woodruff, in discussing this subject and the doctrine that equity will regard that as done which ought to be done, says:

"When the reissues were obtained, it was the plain duty of Wheeler to make and deliver to the others such assignments as the agreements provided for, and such as would have invested them with the legal title jointly with himself. Until then Wheeler might have sued at law upon his legal title for the joint benefit. In equity their title was (in the absence of any proof of a release, reassignment, or of a rescission of the agreement) as clear as his was at law. To this extent equity would regard that as done which ought to be done, and in equity their equitable title and immediate right to share the proceeds of a recovery made them necessary parties to a suit to recover for and to restrain infringements, if that objection is raised. True, the complainant testifies that the agreement 'as far as the transfer of interest in the patents, as called for in that writing, was never acted upon.' This is not sufficient to avoid the effect of the agreement. It does not show that any change was made in the relations of the parties to the reissued patents."

In the above case the equitable right was that of an assignee, or joint owner, but the principle is equally applicable, sub modo, to an exclusive licensee, or a licensee whose interests are alleged to be affected by an alleged infringement, and such licensee has as much standing in a court of equitable jurisdiction as though the agreement fixing its rights had been reduced to writing and delivered.

Referring to the maxim in equity that "equity regards that as done which ought to have been done," Story says (1 Eq. Jur. [13th Ed.] 68):

"The true meaning of this maxim is that equity will treat the subject-matter as to collateral consequences and incidents in the same manner as if the final acts contemplated by the parties had been executed exactly as they ought to have been, not as the parties might have executed them. * * * The most common cases of the application of the rule are under agreements."

See, also, Snell, Eq. 37.

At any rate, even under the averments of the amended bill, the Bowers Southern Dredging Company may be looked upon as an oral licensee of the patentee to the extent contemplated by the agreement, and its interest in the subject-matter of the suit is not denied in the bill, but is admitted, and complainant asserts that he sues for its use and benefit.

Much has been said by counsel in argument about what constitutes an "exclusive" license and what a "simple" license; and I think that in very many cases these terms have been used with little, if any, regard to their entire accuracy when measured by the rights actually conferred. In Waterman v. Mackenzie, 138 U. S. 252, 11 Sup. Ct. 334, 34 L. Ed. 923, hereinafter referred to, Mr. Justice Gray holds that the exclusive right under the patent within and throughout a specified part of the United States to be an "assignment," properly speaking, and to vest in the assignee a title to so much of the patent itself, with the right to sue infringers. A contract merely giving to the grantee a right to make or use, or vend, or to make, use, and vend, the invention within a specified district, is manifestly a simple

license, and conveys no sort of interest in the patent itself, and such a licensee's rights cannot be affected by any infringements of the patent within the specified district. A grant such as was contemplated by the agreement referred to in the amended bill is manifestly different from either that denominated as an "assignment" by Mr. Justice Gray in the case above mentioned, or the character of "simple" license just illustrated, and partakes of the nature of both, being so far exclusive as to prevent any one, even the patentee, from doing those things as to which the exclusive right is conferred upon the grantee, and, as to things permitted to the grantee and also reserved to the grantor, or his subsequent grantees, being assimilated to what I have called a "simple" license. Such a grant seems to be of the character denominated by Judge Lowell in Hammond v. Hunt, post, an "exclusive" license. I think the confusion and uncertainty have arisen from the fact that many courts and text-writers seem to have applied the term "exclusive license" to such a grant as Mr. Justice Gray says is properly an "assignment."

Addressing ourselves to the question whether the Bowers Southern Dredging Company is a necessary or proper party to this suit, it may be said that, as a rule, where the courts have decided that an exclusive licensee for any purpose was not a "proper" party to a suit in equity for the infringement of a patent under which the licensee claimed, it was apparently because no interest of the licensee could be affected by the decree. Thus in Nellis v. Pennock Mfg. Co. (C. C.) 13 Fed. 455, Judge McKennan, in answering the contention that Wheeler, Melick & Co. had such an interest in one of the patents that they were necessary parties to the suit, shows that these parties had an agreement with the former owner of the patent, whereby they acquired "the exclusive right under said recited letters patent to manufacture and sell a certain hay elevator, which has a movable point, which also serves as and performs the functions of prongs or barbs to sustain the hay." This language, it is pointed out by the learned judge, does not constitute an assignment of an exclusive interest in the entire monopoly for the whole or any part of the United States. "It is a license only to manufacture and sell exclusively a specified form of hay elevator, covered by the Walker patent, the beneficial ownership of it as to all other forms of hay forks, and the legal title to it, remaining in D. B. Rogers & Sons. * * * Under all the decisions, the representatives of such an interest are not indispensable parties to a suit upon the patent. Nor are they even proper parties here, because the decree asked for will not affect their interests, and they have since the commencement of this suit released to the complainants all rights and interest which they might have under the patents in suit." It is undoubtedly true that the owner of the whole or any undivided part of the monopoly is as necessary a party to a suit in equity for the infringement of a patent, as in a suit at law for damages.

In considering the question whether the Bowers Southern Dredging Company ought to be made a party to this proceeding for any purpose, we are left in some doubt by the authorities. That it is beneficially interested in the litigation is both admitted by the bill

itself and also appears from averments therein anticipative of the defense made by the plea, and from similar averments in the plea. However, under all the authoritative decisions that I have been able to find, the matter resolves itself now to a question addressing itself to the sound discretion of the court under general equity principles, and not dependent at all upon any open question as to the proper construction of section 4898, Rev. St. (U. S. Comp. St. 1901, p. 3387). I frankly confess that, were the proper construction of that section an open question, I might be inclined to hold that, where the section says that the patentee or his assigns or legal representatives "may in like manner grant and convey an exclusive right under his patent to the whole or any specified part of the United States," an agreement like the one referred to in the bill would, when executed, convey an undivided interest in the patent itself, and I have thought that certain language in the opinion in Littlefield v. Perry, 21 Wall. 205, 22 L. Ed. 579, gave color to that view. My personal view was predicated upon the use, in the statute, of the words "an exclusive right" as contradistinguished to the words "the exclusive rights," and therefore protecting the grant or conveyance of any one or more of the substantial property rights under the patent where they had become the exclusive property of a grantee, to the extent of requiring that such grantee should be made a party to any suit for the infringement of such rights under the patent. That question, however, is no longer on open one. In Waterman v. Mackenzie, 138 U. S. 252, 11 Sup. Ct. 334, 34 L. Ed. 923, the court, by Mr. Justice Gray, says:

"The patentee or his assigns may, by instrument in writing, assign, grant, and convey either (1) the whole patent, comprising the exclusive right to make, use, and vend the invention throughout the United States; or (2) an undivided part or share of that exclusive right; or (3) the exclusive right under the patent within and throughout a specified part of the United States. Rev. St. § 4898. A transfer of either of these three kinds of interests is an assignment, properly speaking, and vests in the assignee a title in so much of the patent itself, with a right to sue infringers; in the second case, jointly with the assignor; in the first and third cases, in the name of the assignee alone. Any assignment or transfer short of one of these is a mere license, giving the licensee no title in the patent, and no right to sue at law in his own name for an infringement. Rev. St. § 4919 (U. S. Comp. St. 1901, p. 3394); Gayler v. Wilder, 10 How. 477, 494, 495, 13 L. Ed. 504; Moore v. Marsh, 7 Wall. 515, 19 L. Ed. 37. In equity, as at law, when the transfer amounts to a license only, the title remains in the owner of the patent; and suit must be brought in his name, and never in the name of the licensee alone, unless that is necessary to prevent an absolute failure of justice, as where the patentee is the infringer and cannot sue himself. Any rights of the licensee must be enforced through or in the name of the owner of the patent, and perhaps, if necessary to protect the rights of all parties, joining the licensee with him as a plaintiff. Rev. St. § 4921 (U. S. Comp. St. 1901, p. 3395); Littlefield v. Perry, 21 Wall. 205, 223, 22 L. Ed. 577; Paper Bag Cases, 105 U. S. 766, 771, 26 L. Ed. 959; Birdsell v. Shaliol, 112 U. S. 485-487, 5 Sup. Ct. 244, 28 L. Ed. 768. And see Renard v. Levenstein, 2 Hem. & Mil. 628. Whether a transfer of a particular right or interest under a patent is an assignment does not depend upon the name by which it calls itself, but upon the legal effect of its provisions. For instance, a grant of an exclusive right to make, use, and vend two patented machines within a certain district is an assignment, and gives the grantee the right to sue in his own name for an infringement within the district because the right, although limited to making, using, and vending two machines, excluding all other persons, even the patentee, from making, using, or vending like machines within the district. Wilson v. Rousseau,

4 How. 646, 686, 11 L. Ed. 1141. On the other hand, the grant of an exclusive right under the patent within a certain district, which does not include the right to make, and the right to use, and the right to sell, is not a grant of a title in the whole patent right within the district, and is therefore only a license. Such, for instance, is a grant of 'the full and exclusive right to make and vend' within a certain district, reserving to the grantor the right to make within the district to be sold outside of it. Gayler v. Wilder, above cited. So is a grant of 'the exclusive right to make and use,' but not to sell, patented machines within a certain district. Mitchell v. Hawley, 16 Wall. 544, 21 L. Ed. 322. So is an instrument granting 'the sole right and privilege of manufacturing and selling' patented articles, and not expressly authorizing their use. because, though this might carry by implication the right to use articles made under the patent by the licensee, it certainly would not authorize him to use such articles made by others. Hayward v. Andrews, 106 U. S. 672, 1 Sup. Ct. 544. 27 L. Ed. 271. See, also, Oliver v. Rumford Chemical Works, 109 U. S. 75, 3 Sup. Ct. 61, 27 L. Ed. 862."

In Birdsell v. Shaliol, 112 U. S. 485, 486, 5 Sup. Ct. 244, 28 L. Ed. 768, 769, Mr. Justice Gray, speaking for the court, said:

"A licensee of a patent cannot bring a suit in his own name at law or in equity for its infringement by a stranger. An action at law for the benefit of the licensee must be brought in the name of the patentee alone. A suit in equity may be brought by the patentee and the licensee together. Gayler v. Wilder, 10 How. 477, 495, 13 L. Ed. 504; Littlefield v. Perry, 21 Wall. 205, 223, 22 L. Ed. 577; Paper Bag Cases, 105 U. S. 766, 771, 26 L. Ed. 959. In a suit in equity brought by the patentee alone, if the defendant seasonably objected to the nonjoinder of the licensee, the court might, as Judge Lowell did in Hammond v. Hunt, 4 Ban. & A. 111, Fed. Cas. No. 6,003, order him to be joined. But, when a suit in equity has been brought and prosecuted in the name of the patentee alone, with the licensee's consent and concurrence, to final judgment, from which, if for too small a sum, an appeal might have been taken in the name of the patentee, we should hesitate to say that the licensee, merely because he was not a formal plaintiff in that suit, could bring a new suit to recover damages against the same defendant for the same infringement."

The above cases are binding authority upon this court upon the points (1) that the holder of such a right as would be conferred by an executed agreement such as the one referred to in the amended bill in this case is merely a licensee, and not an assignee; (2) that such a licensee cannot sue in his own name in equity, except in a case where the infringer is the patentee himself; and (3) that such a licensee is not a necessary party to a suit in equity for an infringement, but, where the objection is seasonably made by the defendant, is a proper party if his interests are to be affected by the decree, and may be made a party in the discretion of the court.

The only remaining question is whether the court in the exercise of a sound discretion should direct that the Bowers Southern Dredging Company be made a party defendant in this case. The case of Hammond v. Hunt, referred to in Birdsell v. Shaliol, supra, and also reported in Fed. Cas. No. 6,003, in which Judge Lowell sustained a plea for want of parties, is interesting, in that it held that an "exclusive licensee" is a necessary party to a suit in equity for infringement, and defined what Judge Lowell calls an "exclusive license" to be "one which does not amount to an assignment by reason of something reserved to the patentee, as in Gayler v. Wilder, 10 How. (51 U. S.) 477, 13 L. Ed. 504, where the patentee excepted out of his

grant the right to make machines within a certain part of the territory granted." The Supreme Court designated the license in Gayler v. Wilder a "mere license," but, as that term was used in contradistinction to the term "assignment," I am of opinion that it is not improperly called an "exclusive license" by Judge Lowell, and I also think the license referred to in Gayler v. Wilder was, in many respects, similar to that contemplated in the agreement recited or referred to in the amended bill in this case, and that, if the decision in Hammond v. Hunt were settled law, it would be necessary to hold that the Bowers Southern Dredging Company was a necessary party in the case. However, I do not so read the Supreme Court cases, but, recalling the cautious language of Mr. Justice Gray in the concluding paragraph quoted from Birdsell v. Shaliol, supra, I do think that the licensee is a proper party to the case, and, even though it is averred by the plaintiff in his amended bill that the suit is being prosecuted in the name of the patentee with the knowledge and consent of the licensee, as well as for its benefit, it is entirely proper for the court, for the purpose of finally concluding all persons interested, and thus preventing the possibility of future litigation touching the same subject-matter, to require the licensee to be joined as a proper party plaintiff thereto. See Story on Equity Pleading (10th Ed.) c. 4, § 72, pp. 73–75.

In accordance with this view, an order may be entered sustaining the plea for want of proper parties plaintiff, but with leave to further amend the amended bill herein within 30 days from this date by joining the Bowers Southern Dredging Company as a party plaintiff.