PENICK ET AL. v. FLOYD WILLIS COTTON CO.

[81 South. 540, Division B, No. 20623.]

1. TAXATION. *Exemption. State lands.*

Swamp and overflowed lands belonging to the state are not now and never were subject to taxation while owned by the state.

2. ADVERSE POSSESSION. *Lands of state.*

Statute of limitations have not run against the state since January 24, 1877 and the title of the state to swamp and overflowed lands is unaffected by adverse possession under a tax deed to such lands or otherwise.

3. SAME.

The statute of limitations does not attach to swamp and overflowed lands owned by the state until the state has parted with its title.

4. ADVERSE POSSESSION. *Color of title. Tax deed.*

None of the statutes of limitations in the Code of 1871 or the Code of 1880 could apply to lands patented by the state in 1909, long after these statutes served their day, and yielded to the later enactments contained in the Code of 1906.

5. ADVERSE POSSESSION. *Color of title. Tax deed.*

Where lands were owned by the state and therefore not subject to taxation a tax deed to such lands was utterly void, and was not aided by section 3095, Code 1906, providing that occupation for three years under a tax deed should bar suit to recover land or assail title because of defect in tax sale.

APPEAL from the chancery court of Yazoo county.
HON. O. B. TAYLOR, Chancellor.

Bill by the Floyd Willis Cotton Company against John Penick and others. From a decree for complainant, defendant appeals.

The facts are fully stated in the opinion of the court.

*Barbour & Henry* and *Campbell & Campbell,* for appellant.

It is axiomatic that complainant, seeking to confirm his title, must show perfect title. We submit that complainant has not done so in this case. There is no allegation in the bill that the land in controversy is swamp and overflow land and no proof was offered to that effect. Under the Act of Congress granting to the state swamp and overflow lands the secretary of the interior was required to furnish to the Governor of the state a list of these lands and the Governor then had to approve same. This action on the part of the secretary and of the Governor then vested the title in the state. The law required that a list of these lands should be on file in the land office at Jackson, Mississippi, and a certified copy of this list showing that the land in controversy was included in this list should have been introduced in evidence. This was not done and title is therefore not shown in the state. *Fore* v. *Williams,* 35 Miss. 533.

The answer of defendant sets up thirty-seven years' actual possession of the land in bar of complainant's right to recover; and pleads the ten year statute of limitations and chapter 23 of Acts of Mississippi 1888 and the one year statute of limitations under this act and the three years' actual occupancy under the Codes of 1880, 1892 and 1906 in bar of complainant's right.

It is well-settled law that when a grantee is in the actual possession and occupancy of any portion of the land called for in his deed, that this possession and occupancy extends to the entire tract conveyed. See *Brougher* v. *Stone,* 72 Miss. 647; *Butts* v. *Ricks,* 82 Miss. 533. These cases are directly in point.

Should the court not agree with our contention that possession of a portion of the land conveyed extends to the entirety, we submit that the record in this case shows that appellant and T. H. Campbell and their

vendors have been in the actual possession of the Northwest quarter of Northwest quarter section 6 (the land in controversy), by exercising every indicia of ownership, use and occupation of which this land was susceptible, viz: being assessed with and paying taxes on said land, cutting and removing firewood and selling timber therefrom and claiming it as against the world. See the case of. *McCaughan* v. *Young,* 85 Miss. 275,. which is directly in point.

The appellant sets up in his answer the long possession of thirty-seven years of himself and those from whom he claims title in bar of the right of complainant to recover and we earnestly submit that this constitutes a complete bar to the right of appellee to recover in both cases. We submit that under the long, continuous and actual possession that whatever defects may appear in the title will be presumed to have been cured under doctrine of "Lost Grant," issued by the state prior to the late patent issued by the state to J. F. McCauley through whom appellee claims. We will cite authorities on this point-later.

We appreciate the fact that the land commissioner has certified that no patent has ever issued from his office except the one to McCauley but this is not conclusive and we think the presumption of a prior grant from the state would prevail where the evidence shows such a long period of uninterrupted actual adverse possession as is disclosed by this record.

The answer set up the Acts of 1999, chapter 23, page 40, in bar of complainants right to recover. We think the chancellor erred in not holding that the Acts of 1888, under the facts of this case, constituted a complete bar to complainant's right to recover. This act is entitled: "An act to quiet and settle the title to certain lands in the Yazoo Delta which were sold by the commissioner of the chancery court of Hinds county in the case of Joshua Green and others against Hemingway and Gibbs, Treasurer and Auditor and Ex-Officio

Liquidating Levee Commissioners.'' It is a well known fact, and doubtless one of the moving causes for the passage of this act, that great confusion as to the title of lands which were conveyed by these commissioners resulted from the fact that both the liquidating levee board and the state of Mississippi claimed the same lands and it was a matter of great doubt as to which had the better title. This act was passed for the purpose of quieting and settling the title in the purchaser under deeds from said commissioners. We find in section 2 of this act that the auditor shall execute deeds, to those purchasing from the commissioners upon proof of payment of all taxes due on the land so purchased since the date of purchase, conveying the title of the state of Mississippi whensoever the same may have been acquired by the state.

We earnestly submit that the effect of this act was a grant from the state of Mississippi to purchasers from said commissioners of whatever title the state had to lands so conveyed whenever acquired. The very purpose of the act was to quiet the title to lands purchased from said commissioners by vesting in the purchasers whatever title the state of Mississippi had in these lands, it mattered not from whom or when the state acquired title. That this was the purpose and effect of the Acts of 1888 is as evident as that Uncle Toby, the hero in that old but remarkable novel, Tristam Shanty, was a gentleman.

The direction to the auditor to make deeds to the purchasers from said commissioners under decree of the chancery court of Hinds county was a mere matter of detail, put into the act so that the purchaser could have a muniment of title which he could have placed of record if he so desired. The chief and important thing is that the act does release to the purchaser from the commissioners whatever title the state had and whenever acquired.

But should the court be of the opinion that a deed from the auditor was necessary to divest the title of the state then we submit that the open, continuous and long possession and occupancy of the lands by William Penick and those from whom he claims title raises the unmistakable presumption that William Penick obtained from the auditor a deed from the state but failed to have the same recorded. In this connection we wish to call the attention of the·court to the fact, as shown by the agreed statement of facts, that William Penick, the ancestor of appellant, in fact received a deed from Mrs. Devilin, February 12, 1887, and this deed was not filed for record until July 20, 1896, a period of almost ten years. Would it be unreasonable to presume that William Penick obtained a deed from the auditor and by similar neglect never had same recorded.

The agreed statement of facts shows that William Penick was in the actual possession of this land prior to and at the date of the passage of the Act of 1888, occupying the same and claiming to be the owner thereof. Is not the presumption almost irresistable that Penick obtained a deed to the land in controversy from the auditor pursuant to the Act of 1888. It was his right and privilege to do so by merely making application and satisfying the auditor that he had paid all taxes accruing since the date of the deed from the commissioners. And we again call the court's attention to the fact that it is agreed that Penick has paid all taxes in said lands. This·act on his part entitled him to have the deed from the auditor.

In support of our contention as to this presumption we cite the court to the following authorities: *Grauth* v. *Gillespie,* 109 Miss. 679; *Native Lumber Co.* v. *Elmer et al.,* 58 So. 703; *Scarbrough* v. *Native Lbr. Co.,·*79 So. 48. These cases are directly in point on the presumption of deed to William Penick and we request the court to make a careful perusal of same.

But if we are mistaken in our contention as to the presumption of a deed from the auditor the Acts of 1888, section 4, page 41, provides: That twelve months' occupation at any time after the passage of this act, of any tract of land under conveyance from said commissioners of the Hinds county chancery court, or under said auditor's deed, or of any part thereof by any such occupant, claiming the whole, shall forever bar any action either at law or in equity for such tract.

This one year statute is specially pleaded in the answer of appellant to appellee's bill. The court will note that this one year statute of limitations is not in favor of any one claiming the land by virtue of tax sale to the levee board but to anyone claiming through a purchaser of said land by virtue of a sale by the commissioners under the decree of chancery court of Hinds county.

This is not a statute of limitations in favor of any tax title, but a statute in favor of a sale under decree of the chancery court of Hinds county. It makes no difference as to whether the land was liable to taxation or not. This one year statute is not against any tax sale but in favor of one claiming through a sale under decree of chancery court of Hinds county. We think this statute of Limitations is exactly similar to the statute of limitations applicable to all sales made under order of the chancery court generally. Section 2173, Code 1871, and section 2693, of Code 1880, and similar sections in the Codes of 1892 and 1906. In *Bradley* v. *Villere,* 66 Miss. 399, this court held that this statute of limitations cured any defect in the sale whether constitutional or not. Judge Campbell in speaking of the statute uses this language:" it applies its beneficient cure to sales without regard to what makes them void." Therefore it makes no difference whether the tax sale to the levee commissioners was void from the fact that there were no taxes due. This one year statute of limitations, under a sale made by the chan-

119 Miss.—53.

cery court of Hinds county cured any defect of whatever character in the title of the levee board.

We think, taking into consideration that it was the purpose of the legislature to do all in its power to quiet the title to lands sold under said decree of the chancery court of Hinds county, even to relinquishing the title of the state of Mississippi whensoever acquired to these lands, that by the enactment of this one year statute of limitations the state intended to waive its right to plead this statute of limitations, but however this may be the statute of limitations ran against the state by virtue of chapter 25, page 402, of Code 1857, until the adoption of the Constitution of 1890 when by section 104 it was provided that no statute of limitations should run against the state.

The statute of limitations certainly began to run against the purchaser from the state as soon as the state parted with title. The agreed statement of facts show that J. F. McCauley purchased this land by patent from the state on October 30, 1909. We submit that the one year statute of limitations under the Act of 1888 and the general statute of limitations applicable to lands sold under the decree of the chancery court immediately begun to run against him and those claiming through him. The agreed statement of facts show that Kit Greer went into the actual possession of this land in 1883 and remained on the land until Mrs. Devlin sold same to Wm. Penick then went into the actual occupancy and possession and so remained until his death in 1901 and those claiming through William Penick have been in the actual possession and occupancy up to present time, paying all taxes on said land.

Section 1 of the Act of 1888 provides that the deeds from the commissioners of the chancery court of Hinds county shall be *prima-facie* evidence of the regularity and validity of the proceedings in the chancery court and of the authority of the commissioners to sell and

of the confirmation of the sale. Said deed from the commissioners of the chancery court of Hinds county was offered in evidence and is now before the court under an agreement that the record in this case should show same. This deed recites that it is made pursuant to decree of the chancery court of Hinds county in the case of *Joshua Green* v. *Gibbs, et al.,* and that the pur-chase money had been paid.

Independent of all other questions we submit that the Acts of 1888 and the general statute of limitations applicable to sales under decrees of the chancery court present a complete bar to the right of Floyd Willis Cotton Company to recover in this case.

*J. G. Holmes,* for appellee.

These suits were filed to confirm appellee's title to the land in controversy, and to remove as a cloud thereon every instrument of record which cast a cloud, doubt, or suspicion, upon appellee's title. In order to cancel of record the cloud, doubt, or suspicion cast upon the appellee's title by the liens of the various trust deeds appearing unsatisfied of record it was necessary, of course, to make the trustees and beneficiaries in said trust deeds, who purported to be the owners of the legal and equitable title to said property, respectively, parties defendant, because no decree could be entered which might interfere with the rights of these parties, unless they were parties to the suit. They were not only proper parties, but were necessary parties, and certainly from no conceivable viewpoint could they be considered improper parties. The mere statement of the proposition is an answer to the objection raised by the demurrers. *Hill et al.* v. *Boyland, et al.,* 40 Miss. 618; *Lawrence* v. *Hand et al.,* 23 Miss. 103.

The decision of the trial court on the merits. Unfortunately for the appellants, here every contention on the merits of this controversy has been decided ad-

versely to them by this honorable court in previous
decisions, and when once it appears that the land in
controversy was patented as swamp and overflowed
land by the United States Government to the state
of Mississippi, and by the state of Mississippi to appel-
lee's grantors and that the title remained in the state
at the time of the attempted sale to the levee board for
taxes, and the execution of the tax deed of F. P. Hilliard,
tax collector, to the levee board, pursuant to said at-
tempted sale, no extended argument of the various de-
fenses set up by the appellants is needed, since these
defenses have  already been repudiated by the deci-
sions of this honorable court.

Let us see, therefore, if the chain of title through
which appellee claims is perfect, and if title to said
land was in fact in the state of Mississippi at the time
of the attempted sale for taxes to the levee board, and
the execution of the tax deed of F. P. Hilliard, tax
collector, under and by virtue of which appellants claim.

The appellee, under section 1961, of the Code of
1906, introduced a certified copy of the swamp and
overflowed land patent issued by the United States to,
the state of Mississippi, dated January 17, 1855, show-
ing a conveyance by the United States Government to
the state of Mississippi, of this particular land as
swamp and overflowed land.  This certified copy of the
patent under section 1961, of the Code of 1906, was
original evidence, and admissible in the same manner
and with the same effect as the original patent. *Bod-
die* v. *Pardee,* 74 Miss. 13.

This proof, therefore, was equivalent to the intro-
duction of the original patent from the United States
Government to the state of Mississippi, and was the
highest and best proof of the conveyance of this land as
swamp and overflowed land by the United States Gov-
ernment to the state of Mississippi, page 533.  That the
patent from the United States Government to the state
of Mississippi is insufficient to show title in the state

of Mississippi, and that such title can only be shown through the introduction of a certified copy of the list of swamp and overflowed lands conveyed to the state of Mississippi by the United States Government, required by law to be filed in the land office at Jackson, Mississippi. Counsel however, have wholly misconstrued the case of *Fore* v. *Williams, supra*. That case only held that the issuance of a patent to the state under the Act of Congress of September 28, 1850, donating swamp and overflowed lands, was not necessary to the vesting in the state of the legal title to the lands thereby granted, but that the legal title vested in the state by virtue of the act itself, and that a list of the swamp and overflowed lands located in this state under said Act of Congress, approved and confirmed by the secretary of the interior, and transmitted by him to the register of the United States Land Office for the district in which the lands are situated, is a record, and that the duly certified copy thereof is admissible in evidence to show the vesting of title in the state of Mississippi. Our court, however, did not, either in the case of *Fore* v. *Williams, supra,* or in subsequent decisions, ever hold that the original patent was not admissible to show title. It is not only admissible to show title, but in my humble judgment and in the opinion of the learned chancellor, who heard this case, is the highest and best evidence of title. As a matter of fact, the admissibility of such patent to show title has already been approved by this court in the case of *Creegan et al.* v. *Hyman et al.,* 46 So. 952, and the very recent case of *Dees* v. *Kingman,* decided February 3, 1919, and reported on page 528 of Volume 11 of the advanced sheets of the Southern Reporter, in both of which cases the evidence of title from the United States to the state of Mississippi, as shown by patent, was approved. Counsel say in their brief with assumed significance, that it is neither alleged in the bill, nor proved, that the land in controversy is swamp and

overflowed land. The very basis of the appellee's claim of title as set forth in its original bill, is through a swamp and overflowed land patent, and the patent from the United States Government to the state of Mississippi, introduced in evidence, it the highest degree of proof as to the character of the land. It is both alleged and proved, therefore, that the land in controversy was swamp and overflowed land, and as such was conveyed by the United States Government to the state of Mississippi.

It appearing from the foregoing that title to this particular land vested in the state of Mississippi, it now becomes important to inquire when the state parted with its title thus acquired. The agreed statement of facts shows that there is of record in Deed Book C. E., page 223, in the office of the chancery clerk of Yazoo county, Mississippi, a swamp and overflowed land patent, dated October 20, 1909, from the state of Mississippi to J. F. McCauley, conveying the land in question. There is no evidence either in the agreed statement of facts, or in the documentary or record evidence introduced on the trial, showing of record in the office of the chancery clerk of said county any other conveyance by the state of Mississippi of said land other than said swamp and overflowed land patent to J. F. McCauley, dated October 20, 1909. On the contrary, significant fact that it is, there appears on page 34 of the Record, as introduced by the appellants, a deed recorded in Book T, page 595, showing a patent from the state of Mississippi to N. D. Link, of all the lands described in the agreed statement of facts, at page 18 of the Record, except the particular land in controversy here. The certificate of the state land commissioner which appears on page 25 of the Record, after eliminating therefrom certain clauses excluded by the court on the objection of appellants, shows that the particular land in controversy was never patented by the state of Mississippi to anyone prior to the time it

was patented to J. F. McCauley, by swamp and over-flowed land patent, dated October 30, 1909. It conclusively appears, therefore, that at the time of the attempted sale of said property to the levee board for levee taxes for the year 1871, and at the time of the execution of the tax deed from F. P. Hilliard, tax collector, to the levee board, dated May 14, 1872, and executed pursuant to said attempted sale, and being the source from which appellants claim title, the title to said property was in the state of Mississippi as swamp and overflowed land, and was not subject to taxes of any kind, and that said attempted sale, and the execution of the deed pursuant thereto, were absolutely null and void, and of no effect. *Howell* v. *Miller,* 88 Miss. 655; *Edwards* v. *Butler,* 89 Miss. 179; *Creegan et al.* v. *Hyman et al., supra; Leavenworth* v. *Reeves,* 64 So. 660; *Hewling et al.* v. *Blake et. al.,* 70 So. 247; *Dees* v. *Kingman, supra.*

The court will observe, therefore, that the source and the only source, from which appellants expressly claim title, is the tax deed from F. P. Hilliard, tax collector, which deed is null and void, and ineffectual to convey title.

Statutes of Limitation Inapplicable. The various statutes of limitations sought to be set up by the appellants in bar of the appellee's right of recovery in this case, are not applicable for two very good reasons.

In the first place, the evidence is insufficient to show adverse possession or actual occupancy of the land for the required period. The agreed statement of facts shows that no possession is claimed until the year 1883 and subsequent thereto; that from said date up to the present time, the particular land in controversy has at all times been wild and uncultivated land and unfenced. Appellants, however, seek to extend to this land their possession of other land included in the original tax deed, and subsequent deed of Gwinn & Hemingway, Commissioners, through which they claim. This position of

appellants on this record untenable. *Davis* v. *Gibbs,* 1 Miss. Dec., page 89; *Leavenworth* v. *Reeves, supra.* In the second place, irrespective of what the court may think this record shows as to the actual possession of the particular land in controversy, I submit that the statute of limitation under which appellants claim ten years adverse possession, is inapplicable for the reason that title to said land was in the state of Mississppi during the period for which possession is claimed. This record shows that no possession is claimed by appellants until the year 1883, and subsequent thereto. On that date the title to this land was in the state of Mississippi, and was not divested from the state until conveyed to J. F. McCauley, by swamp and overflowed land patent, on the 30th of October, 1909. These suits were filed January 13, 1917. During this period of time the statute did not run against the state, and had not, since January 24, 1877. *Willoughby* v. *Caston,* 72 So. 129.

Act of 1888. The Act of 1888, quieting title to lands in the Yazoo Delta, etc., and particularly section 4 thereof, providing that twelve months' occupation thereunder shall bar recovery are inapplicable to the case at bar for the reason that the state had not parted with its title at the time of the attempted sale for taxes to the levee board, and the land in controversy was therefore not subject to taxation. *Creegan et al.* v. *Hyman et al., supra; Dees* v. *Kingman, supra.* While appellants have not pleaded the general statute of limitation applicable to sales under decrees of the chancery court, counsel have sought for the first time to apply this statute in this court, said statute, however, even though it had been pleaded in the court below, has likewise been adjudicated inapplicable to the case at bar in the recent case of *Dees* v. *Kingman, supra.*

Three Years Statute of Limitation. The three years statute of limitation applicable to tax titles, and set up by the appellants, is likewise inapplicable to the case at

bar, because the land in controversy was not taxable at the time of the attempted sale for taxes. This has been conclusively settled by this court. *Hoskins* v. *Railroad,* 78 Miss. 768; *Mitchell* v. *Bond,* 84 Miss. 72; *Dees* v. *Kingman, supra.*

Conclusion. From the foregoing it will appear that this court has already settled beyond any kind of controversy every contention advanced by appellants in the presentation of their case. I want, however, to particularly invite the court to a comparison of the record in the case at bar to that recently presented to the court in the case of *Dees* v. *Kingman, supra.* The cases are almost identical.

It only remains for the court to affirm the learned chancellor in the cases at bar, and thereby reaffirm its previous annunciation of the same law. I respectfully submit that the two cases which are here tried together, should be affirmed.

Stevens, J., delivered the opinion of the court.

Appellee, Floyd Willis Cotton Company, exhibited its bill of complaint in the chancery court of Yazoo county against appellants to confirm its title to the North half of Northwest quarter of Northwest quarter, section 6, township 12, range 3 West. A companion suit was filed by appellees against T. H. Campbell et al. as to the South half of said forty acres. It is agreed that the last-named suit is to be submitted upon briefs filed in this cause, No. 20623 on the docket of this court.

Complainant deraigned title as follows: United States to the state of Mississippi, under the act of 1850 donating swamp and overflowed lands; the state of Mississippi to J. F. McCauley, by patent October 30, 1909; and thereafter deeds from McCauley to J. D. King, King to Floyd Willis, and Floyd Willis to appellee company. In pursuance to Act Sept. 28, 1850 (9 Stat. 519, chapter 84 [U. S. Comp. St. sections 4958-4960]), a patent was

issued from the United States government January 17, 1855. In the bill of complaint it is averred that the defendants were claiming under a tax deed executed by F. P. Hilliard, tax collector, to the board of levee commissioners, May 14, 1872, for the taxes for 1871. The answer of the defendants denied the material allegations of the bill, and denied the allegation of the bill that said tax sale was invalid, and expressly claimed title by virtue of said tax deed. The defendants further pleaded title by adverse possession for ten years, pleaded the provisions of the act of 1888 entitled "An act to quiet and settle the titles to certain lands in the Yazoo Delta," etc. (Laws 1888, chapter 23), and twelve months' occupancy thereunder, and pleaded the three year statute of limitation (section 3095, Code of 1906; section 2459, Hemingway's Code).

The cause was submitted to the chancellor upon the pleadings and an agreed statement of facts. The agreed statement sets forth the chain of title under which the defendants claim. This chain of title, beginning with the tax deed above mentioned to the board of levee commissioners, shows conveyances from Gwin and Hemingway, commissioners, to Mercer and Powell, and by mesne conveyances from Mercer and Powell to the defendant John Penick. The agreed statement shows that the defendants claim title to lands other than the forty acres embraced in those suits and in the deed from J. W. Mercer and George M. Powell to Taylor and Greer, executed August, 1880. Kit Greer, one of the claimants, erected a house on a part of the land conveyed by said deed, and moved into the said house and cleared and put into cultivation about twenty acres of land, and that his occupancy was continued by subsequent grantees in the said chain of title. But the agreed statement furthermore expressly stipulates:

"That the particular land in controversy in the above-styled suits, to wit, the Northwest quarter of the Northwest quarter of section 6, township 12, range 3

west, is wild and uncultivated land, and has never been in cultivation, and that no improvements have ever been put thereon, and that the same has never been fenced or in any manner inclosed; that the cultivation of land and all improvements hereinbefore referred to have not been on any part of the particular land in controversy in said suits, but have been on other parts of the tract of land described in the conveyance by Gwin and Hemingway, commissioners, to J. W. Mercer and George M. Powell, aforesaid, and through whom the defendants claim title.''

The chancellor, on final hearing, confirmed appellee's title and canceled the claim and alleged title of the defendants. Appellants on this appeal rely upon the various statutes of limitations. They rely upon the act of 1888, section 2173, Revised Code of 1871 (a statute which was not pleaded *eo nomine* in the court below), section 2693, Code of 1880, and the provisions of the present Code. It is particularly contended that, if none of these statutes of limitations applied prior to October 30, 1909, the date of the patent from the state of Mississippi to McCauley, the statutes certainly began to run when the state parted with its title and the lands became the subject to private ownership. It is contended that the agreed statement of facts shows that the state parted with its title approximately eight years before the filing of this suit, and that ''surely the statute of limitation commenced running against McCauley and his vendees from the date the state parted with its title,'' and, ''if so, the one-year statute of limitation of the act of 1888 and the various statutes of limitation applicable to sales under decrees of the chancery court bar the right of recovery on behalf of appellee.''

It would seem that any further declaration from this court that swamp and overflowed lands belonging to the state were never the subject of taxation while owned by the state would be unnecessary. *Dees* v. *Kingman,* 80

So. 528, and authorities there cited. The agreed statement and record evidence affirmatively show that the lands in dispute were swamp and overflowed lands, and belonged to the state at the time of the attempted sale by Hilliard, tax collector, to the board of levee commissioners in 1872. A certificate from the state land commissioner is in evidence, reciting that the lands in controversy were never patented by the state to any one prior to October 30, 1909, when a patent was issued to McCauley. It conclusively appears, then, that at the time of the alleged tax sale the title was in the state, and that "all attempt to subject it to taxation is in fraud or in violation of law." *Hoskins* v. *Railroad Co.,* 78 Miss. 768, 29 So. 518, 84 Am. St. Rep. 644. Since January 24, 1877, statutes of limitation do not run against the state. Even, therefore, conceding that appellants had possession, the various acts of possession relied upon and most of the statutes pleaded in aid of the tax title were in force at a time when the state owned the lands, and at a time when the state's title would be unaffected by any of these statutes, or any conduct of the parties in taking possession of or exercising dominion over the premises.

But is is contended that certainly these statutes of limitation began to run when the state parted with its title, and this is the main point to which this opinion is addressed. Learned counsel for appellants do not bring to our attention any case holding that any of the statutes of limitation under the Code of 1871 or the Code of 1880 could be invoked in aid of a tax title made many years before the state ever parted with its title and long after these old statutes have been superseded by the Code of 1906. On the contrary the case of *Dees* v. *Kingman, supra,* is against counsel's contention. We see no occasion to doubt the conclusions we reached in this recent case of *Dees* v. *Kingman.* In fact, it finds support in the prior cases of *Leavenworth* v. *Reeves,* 106 Miss. 722, 64 So. 660, and authorities there dis-

cussed. The only statute which could possibly have any application would be section 3095, Code of 1906, the one in force and effect in the year 1909, when the state parted with its title. It was expressly ruled in *Leavenworth* v. *Reeves* that a tax deed to lands owned by the state is absolutely, void, and cannot be aided or cured by section 3095 of the present Code. Our court, by Smith, C. J., there said:

"Section 3095 has no application, for the reason that, as the land was owned by the state in 1896, it was not then subject to taxation. The defect in this tax deed does not arise by reason of the defective execution by the state's administrative officers of a power to assess and sell for taxes, but by reason of the fact that the legislature had not conferred, or attempted to confer, any such power upon them at all, and to such a defect this statute has no application. The case of *Hoskins* v. *Railroad Co.,* 78 Miss. 771, 29 So. 518, 84 Am. St. Rep. 644, is conclusive of this proposition, and that case was not overruled by, and is not in conflict with, the case of *Hammer* v. *Lumber Co.,* 100 Miss. 349, as was expressly stated in the opinion rendered therein at page 434, 56 So. 466."

To yield to counsel's contention in the case at bar would necessitate overruling *Leavenworth* v. *Reeves.* Our court in the last-named case followed *Hoskins* v. *Railroad Co., supra,* and both cases, we think, announce a wholesome rule to live by. They are not in conflict with *Hamner* v. *Lumber Co.,* 100 Miss. 349, 56 So. 466. We refer, also, to the case of *Willoughby* v. *Caston,* 111 Miss. 688, 72 So. 129, on the general proposition that the statute of limitations conferring title by adverse possession for ten years has no application "until the sovereign power has conveyed the title by proper patent." Admittedly in the case at bar there can be no title by ten years' adverse possession. The lands were patented October 30, 1909, and this suit was filed January 13, 1917. Certainly none of the statutes of limita-

tion in the Code of 1871 or the Code 1880 could apply to lands patented by the state in 1909, long after these statutes served their .day and yielded to the latter enactments contained in the Code of 1906. Upon the authorities mentioned the decree of the learned chancellor must be affirmed.

The same order may be entered in the companion case of *T. H. Campbell et al.* v. *Floyd Willis Cotton Co.* (No. 20725), 81 So. 453.

*Affirmed.*